**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER SIRMONS, JR.,** | : | |
| **Plaintiff** | : | **No. 1:25-cv-01040** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **SCI CAMP HILL PRISON DENTIST'S** | : | |
| **ADMINISTRATION,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Currently before the Court are pro se Plaintiff Christopher Sirmons, Jr. ("Sirmons")

application for leave to proceed <u>in forma pauperis</u> ("IFP Application") and complaint.  For the

reasons stated below, the Court will grant the IFP Application and dismiss the complaint without

prejudice to Sirmons filing an amended complaint.

## I.     BACKGROUND

Sirmons, a convicted, sentenced, and incarcerated state prisoner,[1] commenced this action

by filing a complaint and an application for leave to proceed <u>in forma pauperis</u>, both of which the

Clerk of Court docketed on June 10, 2025.  (Doc. Nos. 1–2.)  When Sirmons filed his <u>in forma</u>

<u>pauperis</u> application, he did not use the Court's standard form; as such, two Administrative

Orders issued requiring him to either refile an <u>in forma pauperis</u> application or remit the filing

fee.  (Doc. Nos. 5, 8.)  Additionally, because Sirmons did not file a certified prisoner account

statement as required by the <u>in forma pauperis</u> statute when he applied for leave to proceed <u>in</u>

<u>forma pauperis</u>, <u>see</u> 28 U.S.C. § 1915(a)(2) ("A prisoner seeking to bring a civil action . . .

without prepayment of fees[,] . . . shall submit a certified copy of the trust fund account

---

[1]  Sirmons is currently incarcerated at Pennsylvania State Correctional Institution Camp Hill
("SCI Camp Hill").

statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . ., obtained from the appropriate official of each prison at which the prisoner is or was confined."), a third Administrative Order issued requiring the superintendent at Sirmons's place of confinement to submit Sirmons's certified account statement with the Clerk of Court.  (Doc. No. 6.)  The Clerk of Court docketed Sirmons's certified account statement and IFP Application on June 30, 2025, and July 31, 2025, respectively.  (Doc. Nos. 7, 10).

In the complaint, Sirmons names SCI Camp Hill's "Dentist's [sic] Administration" as the only Defendant.  See (Doc. No. 1 at 1, 2).  Sirmons alleges that in the afternoon of May 30, 2025, he arrived at SCI Camp Hill's "Dentist Department" for dental work.  See (id. ¶ 6).  Sirmons informed the unidentified dentist that "the only dental work to be done to his mouth is to [r]emove the feelens [sic] that has [sic] been in his teeth longer than twenty year's [sic] and replace them with a feelen [sic] that do [sic] not have silver or aluminum metal into [sic] them."  See (id. ¶ 7).  He claims that replacement of his fillings was necessary because he "found out over the last [f]ew years that he has been dealing with an [a]llergic [r]e[a]ction[] from the silver [sic] aluminum [sic] metal feelens [sic]," which has "been causeing [sic] [d]ismal [f]unction with [h]eart, [d]iscolor raction [sic] with skin, and weakening the Emusystem [sic] over the last 11 years" as well as causing him to "look sick . . . around the mouth, lips [sic]."  See (id. ¶ 8).

The dentist reviewed Sirmons's "[d]ocuments, [r]ecords[,] and x-[r]ays" to gain a "better under standing [sic] for what he was assigned to do."  See (id. ¶ 9).  The dentist then told Sirmons that he was going to perform dental work on a tooth with a cavity located on the upper left side of Sirmons's mouth.  See (id.).

Sirmons asserts that the dentist's statement about his cavity "couldn't have been true" because he "got his teeth worked on in SCI[]Somerset [b]etween year 2022 and year 2023, [a]nd got [a]the teeth that was [sic] a cavity [r]emoved." See (id. ¶ 10). Sirmons also had his teeth that were "treatable" cleaned and "[f]eelen." See (id.). His tooth that supposedly had a cavity "showed (no) [sic] signs of [e]xposure of a cavity or [r]ottenness, [w]eak [e]namel, or appcess [sic]." See (id.).

At this point, "things heated up [b]etween the [d]entist and Sirmons," and the dentist and another "dentist employee" exchanged words with Sirmons. See (id. ¶ 11). During this exchange, the dentist and dental employee called Sirmons a racist and threatened to kill him, see (id.), which led to Sirmons "[sitting] back wounding [sic] why [b]oth [d]entists called him [r]acist and threat[ened] to kill him" even though Sirmons never said anything racist to the dentists or threatened to harm them. See (id.).

Sirmons then asked the dentist if he could begin with Sirmons's dental work. See (id. ¶ 12). While the dentist was preparing, Sirmons was "shaking his head lightly." See (id.). The dentist noticed Sirmons shaking his head and "flaired [sic] up with [r]age" and was "[r]eady to take his [g]loves off." See (id.). The dentist told Sirmons if he was shaking his head because he did not "want this [d]one," he could leave. See (id.). Sirmons responded by informing the dentist that he was only supposed to "[r]emove the [f]eelens [sic] and [r]eplace [them] with new ones." See (id.). He then again asked the dentist to begin the dental work. See (id. ¶ 13).

After approximately forty minutes of dental work, the dentist told Sirmons that he was "about done" and had "just one more thing" to do. See (id.). The dentist then pushed his chair near Sirmons, left, and returned with "a [d]ental [m]achine that had a (saw head) [sic] placed on to it." See (id.). The dentist placed this device onto Sirmons's tooth on the upper left side of his

3

mouth and "used [ b]rut [sic] [f]orce[,] cuting [sic] the one whole tooth into two." See (id.). Sirmons asserts that the tooth "showed no signs or exposure of [sic] a cavity or [r]ottenness, weak enamel[,] or [a]ppcess [sic]." See (id. ¶ 14).

The dentist's procedure caused Sirmons to suffer severe and sharp pain through his jaw, temple, and left side of his neck and face. See (id.). The location of the tooth was a "[b]lood clog and swollen." See (id.). The dentist also "nearly nocked [sic] Sirmons['s f]ront teeth out" while cutting the tooth. See (id.).

Sirmons alleges that his tooth is still split in two and, as such, it "has 100% [e]xposure to become [a c]avity or [r]ottenness[,] weak [e]namel[,] or a[n] appcess [sic]." See (id. ¶ 15). He claims that an "appcess [sic] is life threaten[ing]." See (id.). He also claims that the "more [he] eat [sic] and drink [sic][,] the worst [sic] the pain will get." See (id. ¶ 17).

Based on these allegations, Sirmons asserts that the dentist was deliberately indifferent to his serious medical needs—his allergic reaction to the fillings in his teeth—in violation of the Eighth Amendment to the United States Constitution. See (id. ¶ 17). He also appears to assert that (1) the dentist inflicted cruel and unusual punishment by cutting his tooth in half and leaving it in place and (2) he has been retaliated against because he has a pending civil rights action against the Commonwealth of Pennsylvania Department of Corrections and SCI Camp Hill. See (id. ¶¶ 16–17). For relief, Sirmons requests a declaratory judgment stating that Defendant violated his constitutional rights, $18 million in compensatory damages, and punitive damages. See (id. at 7). Sirmons indicates that he seeks these forms of relief against Defendant "[i]n [a]ll of their [sic] capacities." See (id. ¶ 5).

II.     **LEGAL STANDARDS**

    A.      **Applications for Leave to Proceed <u>in</u> <u>Forma</u> <u>Pauperis</u>**

Under 28 U.S.C. § 1915(a)(1), the Court may allow a plaintiff to commence a civil case "without prepayment of fees or security therefor," if the plaintiff "submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." <u>See</u> <u>id.</u>  This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." <u>Neitzke v. Williams</u>, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [<u>Deutsch v. United States</u>, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court <u>in forma pauperis</u> by filing in good faith an affidavit stating, [<u>inter alia</u>], that [they are] unable to pay the costs of the lawsuit.  <u>Neitzke</u>, 490 U.S. at 324, 109 S.Ct. 1827.

<u>See</u> <u>Douris v. Middletown Twp.</u>, 293 F. App'x 130, 131–32 (3d Cir. 2008) (unpublished) (footnote omitted).

    B.      **The Court's Screening of Complaints Under 28 U.S.C. §§ 1915A and 1915(e)(2)**

Under 28 U.S.C. § 1915A, this Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  <u>See</u> 28 U.S.C. § 1915A(a).  If a complaint is frivolous or fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  <u>See</u> <u>id.</u> § 1915A(b)(1).  The Court has a similar screening obligation with respect to actions filed by prisoners proceeding <u>in forma pauperis</u>.  <u>See</u> <u>id.</u> § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . is frivolous . . . [or] fails to state a claim on which relief may be granted . . . .").

A complaint is frivolous under Sections 1915A(b)(1) and 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact." See Neitzke, 490 U.S. at 325. In addition, when reviewing whether a plaintiff has failed to state a claim upon which relief may be granted under Sections 1915A(b) or 1915(e)(2), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when reviewing a complaint for possible dismissal pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court should not accept legal conclusions as true, and "a formulaic

recitation of the elements of a cause of action" will not survive a complaint's screening under

Sections 1915A and 1915(e)(2).  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful

that a document filed by a pro se litigant is "to be liberally construed."  See Estelle v. Gamble,

429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining

that "when presented with a pro se litigant, we have a special obligation to construe his

complaint liberally" (citation and internal quotation marks omitted)).  Therefore, a pro se

complaint, "however inartfully pleaded," must be held to "less stringent standards than formal

pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal

quotation marks omitted) (quoting Estelle, 429 U.S. at 106).  This means the court must "remain

flexible, especially 'when dealing with imprisoned pro se litigants . . . .'"  See Vogt v. Wetzel, 8

F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45

(3d Cir. 2013))).

Additionally, when construing a pro se complaint, the court will "apply the relevant legal

principle even when the complaint has failed to name it."  See Mala, 704 F.3d at 244.  However,

pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to

all other litigants.'"  See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

### C.    Section 1983

Section 1983 is the statutory vehicle by which private citizens may seek redress for

violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.

This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

## III.     DISCUSSION

### A.      The IFP Application

After reviewing the IFP Application and Sirmons's certified prisoner trust fund account statement, it appears that he is unable to pre-pay the costs of this civil action.  However, because Sirmons is an incarcerated person, the Prison Litigation Reform Act ("PLRA") applies to his IFP Application.  The PLRA provides for a three-strikes rule, which "supplies a powerful incentive not to file frivolous lawsuits . . . ."  See Abdul-Akbar v. McKelvie, 239 F.3d 307, 311 (3d Cir. 2001) (en banc).  This three-strikes rule, which is contained within the in forma pauperis statute, 28 U.S.C. § 1915, provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

See 28 U.S.C. § 1915(g).

8

A strike under this section will accrue:

only if the entire action or appeal is (1) dismissed explicitly because it is 'frivolous,' 'malicious,' or 'fails to state a claim' or (2) dismissed pursuant to a statutory provision or rule that is limited solely to dismissals for such reasons, including (but not necessarily limited to) 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i), 1915(e)(2)(B)(ii), or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

See Byrd v. Shannon, 715 F.3d 117, 126 (3d Cir. 2013).  Additionally, "[t]he text of Section 1915(g)'s three-strikes provision refers to any dismissal for failure to state a claim, whether with prejudice or without."  See Lomax v. Ortiz-Marquez, 140 S. Ct. 1721, 1723 (2020).

After reviewing Sirmons's history of filing federal civil, non-habeas actions, the Court concludes that he had accrued at least three strikes for purposes of Section 1915(g) prior to the date he filed his complaint in this case.  In this regard, Sirmons filed the following actions which qualify as strikes under Section 1915(g):

1. Sirmons, Jr. v. Berks County Pa. Police Dep't Admin., et al., No. 24-cv-06871 (E.D. Pa. filed Dec. 23, 2024): On April 3, 2025, the Honorable John F. Murphy dismissed without prejudice and with prejudice in part Sirmons's complaint for failure to state a claim for relief under Section 1915(e)(2)(B)(ii), did not grant Sirmons leave to amend, and directed the Clerk of Court to close the case.  See id., ECF Nos. 5, 6.  Despite Judge Murphy not granting Sirmons leave to amend, Sirmons filed a motion to file an amended complaint, see id., ECF No. 18, which Judge Murphy denied.  See id., ECF No. 19.  Sirmons appealed from this decision to the Third Circuit Court of Appeals, see id., ECF No. 21, which denied his motion for leave to proceed in forma pauperis on appeal after determining that he has three strikes for purposes of Section 1915(g).  See id., ECF No. 26.

2. Sirmons, Jr. v. Dep't of Corr. Admin, SCI Camp Hill, et al., No. 25-cv-00510 (M.D. Pa. filed Mar. 20, 2025): On June 4, 2025, the undersigned dismissed with prejudice in part and without prejudice in part Sirmons's complaint for failure to state a claim for relief under Section 1915(e)(2)(B)(ii), did not grant him leave to amend, and directed the Clerk of Court to close the case.  See id., ECF Nos. 8, 9.

3. Sirmons, Jr. v. SCI Camp Hill, et al., No. 25-cv-00804 (M.D. Pa. filed May 6, 2025): On June 4, 2025, the undersigned dismissed with prejudice in part and without prejudice in part Sirmons's complaint for failure to state a claim for relief under 1915(e)(2)(B)(ii), did not grant him leave to amend, and directed the Clerk of Court to close the case.  See id., ECF Nos. 5, 6.

Because the Court concludes that Sirmons has accrued three or more strikes, he cannot proceed in forma pauperis in this action unless he specifically and credibly alleges that he "is under imminent damager of serious physical injury." See 28 U.S.C. § 1915(g); Ball v. Famiglio, 726 F.3d 448, 470 (3d Cir. 2013) (indicating that "a prisoner claiming that [they are] in imminent danger of serious physical harm must 'make specific [and] credible allegations to that effect'" (last alteration in original) (quoting Childs v. Miller, 713 F.3d 1262, 1267 (10th Cir. 2013))), abrogated in part on other grounds by Coleman v. Tollefson, 575 U.S. 532, 537–38 (2015). This means that Sirmons must allege that he is "seek[ing] relief from a danger which is 'imminent' at the time" he filed his complaint. See Abdul-Akbar, 239 F.3d at 312. If his alleged danger has passed, he is not in imminent danger. See id. at 313 ("[Section 1915(g)] contemplates that the 'imminent danger' will exist contemporaneously with the bringing of the action. Someone whose danger has passed cannot reasonably be described as someone who 'is' in danger, nor can that past danger reasonably be described as 'imminent.'").

Here, although the Court is concerned about the credibility of Sirmons's allegation that a dentist intentionally split his tooth and then allowed Sirmons to leave the dental office with the split tooth, this allegation is sufficient to satisfy his high burden under Section 1915(g) to show that he was in imminent danger of serious physical harm due to the possibility of his split tooth leading to a severe infection (such as an abscess). See, e.g., McAlphin v. Toney, 281 F.3d 709, 711 (8th Cir. 2002) (finding that the plaintiff's allegation of a spreading mouth infection, caused by two delayed tooth extractions, was sufficient to show imminent serious danger); Stine v. Oliver, 644 F. App'x 857, 859–60 (10th Cir. 2016) (concluding that appellant's allegations that "his teeth are infected and abscessed" and "authorities are failing to provide dental care" were sufficient to satisfy Section 1915(g)); Bradshaw v. Phillip, No. 21-cv-00776, 2022 WL 504976,

10

at \*8 (N.D.N.Y. Feb. 18, 2022) (explaining that the court previously concluded that the plaintiff "faced a risk of serious physical harm from tooth decay"); but see Williams v. Gibson, No. 22-cv-01258, 2023 WL 2401776, at \*2 (E.D. Ark. Mar. 8, 2023) (determining that the plaintiff's "allegation that he has not yet received treatment for his unspecified tooth pain does not meet the high burden to show imminent serious physical harm" (citation omitted)).  Accordingly, because Sirmons's IFP Application and certified account statement show that he cannot prepay the filing fee in this case, the Court will grant the IFP Application and allow Sirmons to proceed in forma pauperis in this case.[2]

### B.       Screening of the Complaint

As indicated above, the only named Defendant in this case is SCI Camp Hill's Dentist's Association.  See (Doc. No. 1 at 1).  Section 1983 permits claims only against a "person" who violates the plaintiff's constitutional rights while acting under color of state law.  See 42 U.S.C. § 1983.  A prison medical department or "Dentist's Association," is not a proper defendant to a Section 1983 claim.  See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (concluding that the plaintiff's Section 1983 claim against the New Jersey Prison Medical Department could not proceed because the Department was not a "person" for purposes of the statute (citation omitted)).  Accordingly, the Court will dismiss Sirmons's complaint for failure to state a plausible claim for relief under Section 1915(e)(2)(B)(ii) and 1915A(b)(1) because he fails to name a proper defendant under Section 1983.

---

[2]  However, because Sirmons is a prisoner, he is advised that he will be obligated to pay the filing fees for this case in installments in accordance with the Prison Litigation Reform Act ("PLRA"), regardless of the outcome.  See 28 U.S.C. § 1915(b).

### C.      Leave to Amend

Having determined that Sirmons's Section 1983 claim against Defendant is subject to dismissal, the Court must determine whether to grant him leave to file an amended complaint. Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Here, although Sirmons has not named a proper defendant for Section 1983 purposes, the Court cannot determine at this time that an amendment would be futile. As such, the Court will grant Sirmons leave to file an amended complaint to the extent that he can name a proper defendant for his Section 1983 claim.

12

**IV.     CONCLUSION**

For the reasons stated above, the Court will grant the IFP Application and dismiss the complaint without prejudice to Sirmons filing an amended complaint to the extent he can name a proper defendant for his Section 1983 claim.  An appropriate Order follows.[3]


s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[3]  The Order will provide additional information to Sirmons about the filing of an amended complaint.